```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

AGATA KOTAPKA,                  :
                                :
     Plaintiff,                 :
                                :
v.                              :    Case No. 3:18-CV-1660(RNC)
                                :
CITY OF BRIDGEPORT,             :
                                :
     Defendant.                 :
```

## RULING AND ORDER

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e17 (as amended), and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 et seq., claiming that she was discharged from her position as a probationary police officer in Bridgeport because of sex discrimination.  She does not dispute that the Bridgeport Police Department ("BPD") had grounds to discipline her for violating BPD regulations.  However, she claims that if she were male, BPD Chief Armando Perez would have given her another chance, as he has male police officers who engaged in various forms of misconduct.  The City has moved for summary judgment on the ground that, as a matter of law, plaintiff was not similarly situated in all material respects to the male officers with whom she compares herself, principally because all of them were permanent employees.[1]  I deny the motion

---

[1] Summary judgment would be appropriate if the plaintiff and her comparators were not similarly situated as a matter of law because in employment

1

for summary judgment because Second Circuit precedent indicates that whether plaintiff and her comparators were so situated that the disparity in Chief Perez's treatment of them supports an inference of sex discrimination is a jury issue.

I.

The historical facts are essentially undisputed. While employed as a probationary police officer in Bridgeport, plaintiff was living with Brien Pennell, a registered sex offender. Pennell was being supervised by the Connecticut Office of Adult Probation following his convictions in state court for sexually assaulting a 13-year-old girl and possessing child pornography. Before Pennell moved into plaintiff's apartment, his probation officer met with her to go over the conditions of his probation, which prohibited him from having or accessing unmonitored and unauthorized electronic devices capable of connecting to the internet. At some point, plaintiff became aware that Pennell had an unauthorized and unmonitored

---

discrimination cases under Title VII, the plaintiff must establish a prima facie case of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). That prima facie case involves showing that "1) [a plaintiff] is a member of a protected class; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination." Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999). For the final inference element, "[a] plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (citation omitted). "[A] court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790-91 (2d Cir. 2007) (citation omitted).

smartphone he was using to access the internet as well as unauthorized internet service under his name, but she took no action on the understanding that he was going online merely for innocent purposes.  With that same understanding, she allowed him to use her laptop from time to time.

In fact, Pennell was going online to view and download child pornography depicting prepubescent minors.  His online activities came to the attention of the Department of Homeland Security ("DHS"), which contacted the Connecticut Office of Adult Probation.  On learning that Pennell was living with a police officer, a DHS investigator notified BPD that Pennell was under investigation.  Probation officials subsequently searched the apartment plaintiff shared with Pennell and seized her laptop.  A contemporaneous search of a hidden compartment in Pennell's vehicle resulted in the seizure of his smartphone and another internet-capable device, which were later found to contain child pornography.  Pennell was arrested for violating the conditions of his probation then charged in federal court with receiving child pornography.  He pleaded guilty to the federal charge and was sentenced to a mandatory minimum term of imprisonment of 15 years.

After Pennell was arrested, BPD Chief Armando Perez asked the Department's Office of Internal Affairs to investigate plaintiff's conduct.  In an interview conducted by OIA,

3

plaintiff admitted that she knew Pennell possessed a smartphone in violation of the conditions of his probation.  In addition, she admitted that she allowed him to use her laptop approximately 20 to 30 times.  She testified that she did not give it much thought because Pennell had led her to believe he was using the internet for innocent purposes only and she trusted him.  OIA concluded that by facilitating and failing to report Pennell's use of internet-capable devices in violation of the conditions of his probation, among other related conduct, plaintiff had violated BPD regulations.[2]

After receiving OIA's report, Chief Perez decided that plaintiff's admitted misconduct showed she was "unfit for service," the termination standard applicable to probationary police officers, ECF No. 26 at 11 (citing the Bridgeport City Charter, ch. 17 § 205), and he referred the matter for a hearing by a three-member panel of the Civil Service Commission.  At the hearing, Chief Perez recommended that plaintiff's probationary employment be terminated because the City could not take the risk of having her as a permanent employee protected against termination by the "just cause" standard applicable to permanent

---

[2] The OIA investigation also found violations related to the following conduct: plaintiff at times brought her service weapon and ammunition to the home she shared with Pennell, even though she knew his probation conditions forbade him from having a firearm or ammunition in his residence; plaintiff failed to disclose to BPD that she was contacted by DHS regarding Pennell's arrest and that her apartment was searched and several items were seized; and plaintiff did not immediately return phone calls from the BPD regarding the OIA investigation, on advice of her attorney.

4

officers under the collective bargaining agreement between the police union and the City, id. at 25 (citing the collective bargaining agreement, Article 11.1).  The three members of the panel and the Director of Personnel agreed with his recommendation so plaintiff's employment was terminated.  Plaintiff then brought this suit claiming that the termination was motivated by sex discrimination.

## II.

In support of her discrimination claim, plaintiff points to the disparity between the way Chief Perez treated her and the way he treated the following male officers:[3]

- Officer Steven Figueroa was arrested for criminal mischief and disorderly conduct, breach of the peace, stalking, harassment, and violation of a protective order.  He was disciplined with a loss of ten holidays.  When he was later arrested for risk of injury to a child, assault, threatening, unlawful restraint, disorderly conduct, sexual assault, and violating the terms of his conditional discharge, he was terminated.

- Officer Jose Sepulveda was arrested for threatening, criminal mischief, and breach of the peace.  He received

---

[3] This summary only includes the specific employees punished by Chief Perez that Kotapka highlights as comparators, not all of the officers that the defendant includes in its statement of material facts.

5

> a verbal warning (imposed after the start of this litigation).
>
> - Officer Paul Cari was arrested for disorderly conduct, assault, and threatening. He received a verbal warning (imposed after the start of this litigation).
>
> - Officer John Carrano was arrested for driving under the influence, failure to drive upon the right, driving the wrong way on the highway, and assault. He resigned before the disciplinary process was concluded.[4]

The City contends that, with regard to each of these comparators, plaintiff cannot sustain her burden of establishing that she was similarly situated to them in all material respects. See Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) ("A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." (citation omitted)). No such finding can be made, the City argues, because the male officers had a different employment status (permanent v. probationary), and were subject to a different termination standard (just cause v. unfit for service), with different administrative remedies available to them (arbitration proceedings conducted pursuant to the

---

[4] His resignation also came after the start of this litigation, so at the time plaintiff filed this suit, the disciplinary process was ongoing.

collective bargaining agreement v. a civil service commission hearing leading to a tripartite vote).  In addition, the male officers' conduct was not substantially similar to plaintiff's conduct.  Plaintiff does not dispute that these differences exist.

Generally speaking, a probationary employee who brings a disparate treatment case under Title VII may not use a permanent employee as a comparator to raise an inference of discrimination.  However, the Second Circuit has decided that a probationary employee who has been terminated for engaging in a violation of workplace rules may raise an inference of discrimination by pointing to a permanent employee who engaged in the same or similar conduct yet received no discipline.  See Feingold v. State of New York, 366 F.3d 138, 153-54 (2d Cir. 2004).  In plaintiff's view, a jury could reasonably find that this is such a case because she and her comparators were subject to the same workplace standards,[5] Chief Perez was responsible for

---

[5] The plaintiff argues that the "just cause" and "unfit for service" standards for permanent and probationary employees respectively are substantively the same: "Cause was required to terminate the employment of the male officers as well as the plaintiff. See Otero v. Colligan, No. CIV.A. 399CV2378WIG, 2006 WL 1438711, at *11 (D. Conn. May 17, 2006) (Internal quotation omitted) ('[A] probationary appointee may be terminated only if he is deemed "unfit for service," in other words, for cause.')."  ECF No. 32 at 22.  I conclude that even if the just cause and unfit for service standards were not precisely the same, given the Second Circuit's permissive approach to comparing probationary and permanent employees under Feingold, the standards are similar enough, in both requiring cause for firing, to permit a jury to reasonably find that the same workplace standards applied.  The plaintiff and her comparators were also both governed by the same Department rules and regulations.

7

deciding what, if any, discipline should be imposed in all cases, and he undertook to promptly terminate her employment while allowing male officers who engaged in objectively more serious misconduct to go unpunished.  See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001) (outlining the factors for considering whether a plaintiff and her comparators are similarly situated, including whether they had the same supervisors, were governed by the same performance evaluation and disciplinary standards, and engaged in comparably serious conduct without any differentiating circumstances).  Given these factors, plaintiff contends, there is a genuine issue whether she and the male officers were so situated that the disparity in the treatment they received supports an inference of sex discrimination.

Plaintiff's claim varies from the one described in Feingold in two ways: the conduct that led to her discharge does not closely resemble the conduct of the male officers she is using as comparators, and the male officers ultimately received some discipline.[6]  Because of these differences, the inference of

---

[6] The precise circumstances of this discipline weigh in the plaintiff's favor at the summary judgment stage.  Reading the record in the light most favorable to the plaintiff, it is possible that some of the discipline imposed on her comparators was meted out in response to this litigation.  See ECF No. 40 at 5-6.  Furthermore, some of that discipline, such as the loss of holidays or verbal warnings, is effectively de minimis.  Feingold suggests that a gap between termination of a probationary employee and no discipline for a permanent employee is sufficient to justify a jury's inference of discrimination.  Here, there is a gap between termination of a probationary employee and de minimis punishment of permanent employees, perhaps imposed in

8

discrimination raised by plaintiff's claim is weaker than the inference raised by the claim described in Feingold.  The legal issue presented by the City's motion for summary judgment is whether, in the absence of other evidence, the inference is too weak to permit a jury to reasonably find in favor of the plaintiff on her discrimination claim.

The City contends that Chief Perez's disparate treatment of plaintiff and her comparators is readily explained by the difference in their employment status such that any inference of discrimination is unreasonable.  In addition, the City contends that permitting plaintiff's claim to go to a jury would tend to defeat the purpose of probationary employment by enabling persons who have violated workplace rules while on probation to threaten employers with legal liability if a jury could find that a permanent employee probably would be retained in similar circumstances.  These arguments have considerable merit.

However, recent Second Circuit precedent supports entrusting a jury with the decision whether plaintiff and her comparators were so situated that it would be reasonable to expect them to be treated similarly in the disciplinary process in the absence of discrimination.  See Berube v. Great Atl. & Pac. Tea Co., 348 F. App'x 684, 686-87 (2d Cir. 2009); Carris v.

---

response to this very suit.  I find that this gap is also sufficient to permit a jury to make an inference of discrimination, even if the facts are weaker for the plaintiff here than for her counterpart in Feingold.

9

First Student, Inc., 682 F. App'x 30, 32-33 (2d Cir. 2017); Radwan v. Manuel, 55 F.4th 101, 138 (2d Cir. 2022).

In Radwan, the Second Circuit reversed a grant of summary judgment to the University of Connecticut in a sex discrimination case brought by a female student athlete who lost her scholarship after she made an obscene gesture on national television.  The plaintiff alleged that the discipline she received was disproportionate to that received by male student athletes who engaged in other types of misconduct, such as kicking a ball into the stands during a soccer game, without incurring any discipline beyond a verbal reprimand.  The Court of Appeals ruled that the record, viewed as a whole and in a manner most favorable to the plaintiff, would permit a jury to find that, but for plaintiff's gender, her misconduct would not have caused the University to terminate her scholarship.  Though the plaintiff's conduct differed markedly from the conduct of the male students, and was arguably more serious in terms of the embarrassment it caused the University, the Court had no doubt about the ability of a jury to consider the disparity in the University's treatment of the students in light of all the facts and circumstances and ultimately decide whether an inference of sex discrimination was warranted.

In view of Radwan's emphasis on entrusting the jury with assessing the comparability of conduct and Feingold's

endorsement of comparing permanent and probationary employees when the disparity in treatment is significant, I conclude that whether plaintiff and her comparators were similarly situated for purposes of establishing an inference of sex discrimination is best left to a jury to decide.

## III.

Accordingly, the motion for summary judgment is hereby denied.

So ordered this 22nd day of April 2023.

                                            /s/ RNC
                                    Robert N. Chatigny
                              United States District Judge